UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VESPER MARITIME LIMITED<br>  as Owner of the S/Y VESPER and Insured<br>  Under Declaration of Insurance<br>  Line Slip Ref. 80740185170096<br><br>        Plaintiff,<br><br>          v.<br><br><br>CERTAIN UNDERWRITERS AT LLOYDS,<br>LONDON, SUBSCRIBING TO CERTIFICATE<br>NO. 80740185170096<br><br><br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 20-cv-10303<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

COMPLAINT

Now comes the Plaintiff, Vesper Maritime Limited and makes its complaint against the defendant as follows:

PARTIES

1. The Plaintiff, Vesper Maritime Limited ("VML") is a legal entity formed and existing pursuant to the laws of the British Virgin Islands with an address at Sea Meadow House, Blackburne Highway, PO Box 116, Road Town 116, Tortola, British Virgin Islands and at all times material hereto was the owner of the S/Y VESPER.  VML's principal place of business is at 125 High Street, Boston, Massachusetts, USA 02110.

2. The Defendant, Certain Underwriters at Lloyds, London, ("hereafter collectively Lloyds") are subscribers to Certificate No. B0740185170096 (including signed lines Brit Specialty, Argo International, Watkins and Atrium) each having a common address of Lloyd's, One Lime Street,

London EC3M 7HA . Underwriter Brit Specialty is lead claims representative and agent for Underwriters subscribed.

## JURISDICTION

3. Subject matter jurisdiction is had pursuant to 28 U.S.C. §1332 as no parties are citizens of the same state and the amount in controversy exceeds the sum of $175,000.00. The defendant does business in the Commonwealth of Massachusetts and this action arises out of that conduct.

## FACTS APPLICABLE TO ALL COUNTS

4. VML is and was at all times material hereto the owner and operator of the Yacht VESPER (hereafter "VESPER" or "the Yacht"), a 95 foot custom, sloop-rigged sailing yacht designed by German Frers and built by Yachting Developments of New Zealand in 2006.

5. Prior to November 2018, Vesper Maritime had a long-standing and special relationship with Lloyds it having insured S/Y VESPER against common maritime risks including Hull Insurance, all enumerated in the certificate with a unique market reference number of 80740185170096, a policy of insurance issued by them and which, in turn attaches to Line Slip Reference 8074018517. In these engagements through the years, VML has paid Lloyds many dollars in insurance premiums. The declaration/certificate/policy was delivered to VML in Boston, Massachusetts by defendant through its broker based in the United States.

6. In early November 2018, VESPER, while insured at, by and through Lloyds, completed a long-term service period at LYMAN MORSE BOATBUILDING CO. ("LMB") in Thomaston, Maine where VML had previously utilized the services of LMB to maintain and store the vessel The yacht departed LYMAN MORSE and put to sea on Sunday November 4, 2018.

7. After encountering an issue with the vessel's steering unit, VESPER diverted back to LMB, arriving there at approximately 0700 on November 5, 2018.

8. On Wednesday November 7, 2018 VESPER was hauled from the water by LMB via its Travelift and secured in the vessel washdown area.  The yacht remained supported by the slings of the Travelift until November 9, 2018.

9. On November 9, 2018, VESPER was moved via Travelift to a staging area of the LMB yard. where it was then standed by LMB personnel.

10.  Throughout the day of Friday November 9, 2018 VESPER crew and LMB personnel worked on deck and inside the yacht in addition to below the hull upon the rudder bearing opening in the aft section of the bottom of the yacht.

11.  At approximately 0415 hours on November 10, 2018 VESPER's Captain was contacted by LMB informing him that VESPER had fallen from the stands and was laying over on her port side on the hard.  VML promptly gave due notice of the loss to Lloyds as called for in the policy, reporting the casualty to Underwriters on or about November 10, 2018.

12.  VESPER sustained catastrophic, significant and extraordinary damages as a result of the fall-over due to the negligence of LMB and that boatyard's failure to carry out services to VESPER and for VML in a workmanlike fashion, including storing the yacht with an insufficient number of stands and no cribbing.

13.  As a result of the casualty, VESPER became and remains to this time, a total or constructive total loss ("CTL") and cannot be repaired to the condition she was in prior to the fall or otherwise be put in a condition that would render her a safe and seaworthy vessel for ocean voyaging purposes.

14. In the immediate aftermath of the loss, all interested parties, including VML, LMB and Lloyds agreed to participate in a Joint Survey process per applicable industry

practices, standards, and protocols in order to determine the extent of damages to the vessel. Lloyds appointed AqualisBraemar ("Braemar") for those purposes and Braemar assigned surveyor Luca Bruga ("Bruga") to participate on its behalf.  When Bruga sought employment elsewhere in or about April of 2019, Braemar replaced him with its Managing Director, John Walker ("Walker").

15.  All participating surveyors, including those appointed by on behalf of Lloyds, agreed that Mr. Peter Gimpel of Winchester Design Group was considered to be the person most qualified to put forth damage assessment from which bids would be solicited and all agreed that he would serve in the capacity of lead surveyor as he is recognized as a naval architect with specific knowledge and expertise in high tech composite vessels such as VESPER. A  Joint Survey Report with Mr. Gimpel's report integrated was eventually signed by all parties.

16.  Subsequent to the fall, LMB incredibly denied all responsibility for the casualty and at Lloyd's direction, and with Lloyd's authority, a lawsuit was commenced by VML against LMB to protect the interests of VML and Lloyd's in seeking damages from LMB related to the casualty.  This litigation was commenced in fulfillment of VML obligations to mitigate and recover damages for both underwriters and assured and pursuant to VML's contractual obligations to sue and labor toward such recoveries.  Since the incident of November 10, 2018, VML has acted at all times as the prudent uninsured person.

17.  VML served a Notice of Abandonment as to VESPER on or about 17 April 2019, stating that the yacht was a constructive total loss, on the basis that the cost of repairing the yacht would exceed its insured value of US$6.3 million.  To date, no formal written response of any type or kind was ever received by the Assured or their representatives.

18. All of the rights of both VML and Lloyds have been preserved to the maximum extent possible.

19. VML to date has expended more than USD Six Hundred Thousand ($600,000.00) in personal funds toward necessary sue and labor expense, with no participation, or even offer to do so, by Lloyds.

20. On April 2, 2019, after an extensive investigation, engineering study and review, and consultation with composite expert builders, VML through counsel presented its claim in London, for Constructive Total Loss ("CTL") of VESPER. Lloyds directed VML to obtain further and additional information

21. Subsequently, Engineering reports prepared by Peter Gimpel, N.A. of Winchester Design Group and a Joint Survey Report (signed and acknowledged by Lloyds' surveyor), including complex composite analysis, were provided as along with two (2) preliminary repair bids from two (2) competent yards with experience repairing composite yachts, including Yachting Developments Limited ("(YDL)")(builder of VESPER) and Front Street Shipyard ("FSS") in Maine. The engineering reports clearly demonstrated a critically damaged yacht – and one that should reasonably never be repaired due to presence of actual severe damage to critical composite structures. Nonetheless, the repair bids themselves demonstrated, quite excessively, and by any reasonable financial analysis, an actual CTL.

22. Despite the additional intensive efforts and involvement of FSS and YDL, Walker urged Lloyds to seek a repair estimate from a third shipyard, BMComposites ("BMC") located in Palma de Mallorca, Spain, some 4000 miles from the situs of the casualty and location of VESPER. BMC's estimator was one Mark Branagh ("Branagh") who was in communication with Walker and Underwriters regarding VESPER since at least July 2019. Lloyds refused to

pay for a BMC team to travel to the VESPER and to this day neither Walker or Branagh, or any representative of Braemar or BMC, has seen or been aboard VESPER in order to be able to prepare a complete and accurate repair bid.  Instead Lloyds, through Walker, agreed only to pay BMC just some $2500 for a "desktop study" of the limited information directed by Walker.

23.  In soliciting a repair bid from BMC, Walker personally and directly advised Branagh, in writing, to "ignore" critical aspects of both the Repair Specification and RFP, and Naval Architectural Damage Report. Thus, Walker on behalf of Lloyds instructed Branagh to ignore those portions of the engineering reports that are absolutely the most important from a safety and integrity standpoint, and thus directed Branagh to prepare and submit an incomplete – and thereby low bid, which he proceeded to do.

24.  As of the filing of this complaint Lloyds has refused to declare VESPER a total loss or CTL, relying on the low bid of BMC; has failed to respond to VML's notice of abandonment; has failed to pay the itemized and demonstrated out of pocket expenses it authorized VML to make pursuant to the Sue and Labor Clauses of the policy; has failed and refused to cooperate with VML in maximizing recovery and maintaining a beneficial position in the litigation with LMB, and otherwise refused to provide VML with any determination or decision on the claims presented which omissions are prejudicial to the interests of its insured in that litigation; and has otherwise frustrated VML's efforts to be made whole following the loss of its yacht.

COUNT ONE
BREACH OF MARITIME CONTRACT

25.  Vesper repeats and reiterates all of its allegations set forth in paragraphs one through 10, inclusive, of its complaint as if separately stated herein.

26.  The Declaration and Certificate No. 80740185170096, Ex. A, constitutes a maritime contract.

27.. Lloyd's failures to pay out amounts it is obligated to pay pursuant to the contract constitutes a material breach of its terms.

28. VML has performed each and every of its obligations under the contract between the parties.

29. As a result of Lloyd's breach of the terms of the policy, VML has sustained and continues to sustain substantial damages.

   WHEREFORE, VML asks this Honorable Court to enter judgment in its favor against Lloyd's for the damages sustained by VML, including monetary damages, compensatory damages, consequential damages; punitive damages, attorneys' fees, costs; and interest in an amount not less than FIFTEEN MILLION DOLLARS ($15,000,000.00); as well as for such other and further relief as the Court may deem equitable and proper.

COUNT TWO
UNFAIR and DECEPTIVE ACTS OR PRACTICES
PURSUANT TO MASS. GEN. LAWS CH.. 93A §§ 9, 11 AND CH. 176(D)

30. Vesper repeats and reiterates all of its allegations set forth in paragraphs one through 14, inclusive, of its complaint as if separately stated herein.

31. In acting, or failing to act, in the manner described above defendant:

(a) Misrepresented pertinent facts or insurance policy provisions relating to coverages at issue;

(b) Failed to acknowledge and act reasonably promptly upon communications with respect to claims arising under the policy;

(c) Failed to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

(d) Refused to pay claims without conducting a reasonable investigation based upon all available information;

(e) Failed to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

(f) Failed to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

(g) Compelled VML to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;

32.  These acts and omissions of defendant as described above constitute unfair claim settlement practices as defined in § 3 (9) of Mass. Gen. Laws ch. 176D.

33.  Defendant is liable for damages, including punitive damages provided by the applicable statutes.

WHEREFORE, Vesper asks this Honorable Court to enter judgment in its favor against Lyman Morse for the damages sustained by VML, including monetary damages, compensatory damages, consequential damages; punitive damages, attorneys' fees, costs; and interest in an amount not less than FIFTEEN MILLION DOLLARS ($15,000,000.00); as well as for such other and further relief as the Court may deem equitable and proper.

## COUNT THREE
## BREACH OF FIDUCIARY DUTY

34. VESPER reasserts and reiterates the allegations set forth in paragraphs one through 18 of their complaint and incorporates the same by reference.

35.  The relationship between VML and Lloyds was one of legal and ethical trust and Lloyds was VML's fiduciary with respect to marine insurance matters.

36.  As its marine underwriter, Lloyds owed VML a duty to act with reasonable care in carrying out its obligations under the policy and in protecting the interests of its insured in all respects.

37. Lloyds negligently and/or intentionally breached the fiduciary duty it owed VML through the acts or omissions described above.

38. As a result of Lyman Morse's breach of the fiduciary duties it owed VML, VML sustained substantial damages.

WHEREFORE, Vesper asks this Honorable Court to enter judgment in its favor against Lloyds for the damages sustained by VML, including monetary damages, compensatory damages, consequential damages; punitive damages, attorneys' fees, costs; and interest in an amount not less than FIFTEEN MILLION DOLLARS ($15,000,000.00); as well as for such other and further relief as the Court may deem equitable and proper.

COUNT FOUR
PUNITIVE DAMAGES UNDER THE GENERAL MARITIME LAW

39. VML repeats and reiterates all of its allegations set forth in paragraphs one through 49, inclusive, of its complaint as if separately stated herein.

40. The actions of Lloyds in failing to adjust the claim, investigate the claim, and make payments as obligated to do so under the policy constitute outrageous misconduct that is shocking to the conscience of reasonable men.

41. VML is entitled to an award of punitive damages under the General Maritime Law of the United States.

WHEREFORE, VML asks this Honorable Court to enter judgment in its favor against Lloyds for the damages sustained by VML, including monetary damages, compensatory damages, consequential damages; punitive damages, attorneys' fees, costs; and interest in an amount not less than FIFTEEN MILLION DOLLARS ($15,000,000.00); as well as for such other and further relief as the Court may deem equitable and proper.

*VML DEMANDS A JURY TRIAL ON ALL ISSUES TRIALBLE TO A JURY*

DATED:  February 14, 2020				VESPER MARITIME LIMITED
							By its attorneys,


							Wicker Smith O'Hara McCoy & Ford, P.A.

							 /s/ *Andrew Bate*
							By: Andrew Bate, Esq.
							(Pro Hac Vice Certification Pending)
							9128 Strada Place, Suite 10200
							Naples, FL  34108
							Tel: (239) 552-5300

							WELTE & WELTE, P.A.

							 /s/ *William H. Welte*
							By: William H. Welte, Esq.
							13 Wood Street
							Camden, Maine 04843
							(207) 236-7786
							wwelte@weltelaw.com
							BBO#522670